## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH WALTHOUR,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL NO. 3:CV-07-443** |
| | : | |
| **vs.** | : | **(JUDGE VANASKIE)** |
| | : | |
| **FRANKLIN J. TENNIS, <u>et al</u>.,** | : | |
| | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

### I.   Introduction

Joseph Walthour commenced this civil rights action pursuant to 42 U.S.C. § 1983 on March 8, 2007, while confined at the State Correctional Institution at Rockview (SCI-Rockview), Pennsylvania.  Named as Defendants are the following SCI-Rockview employees: Franklin J. Tennis, Facility Manager; Joel S. Dickson, Deputy Superintendent; Jeffrey Rackovan, Facility Manager Assistant and Grievance Coordinator; Harry Bower, Maintenance Shops Supervisor; John Stover, Foreman Maintenance Manager; and Barry Yarnell, Labor Foreman.  Also named as a Defendant is Sharon M. Burks, Chief Grievance Officer for the Pennsylvania Department of Corrections.   Plaintiff contends that Defendants were deliberately indifferent to his health and safety with regard to an incident that occurred on April 28, 2006, while Plaintiff was on "trash removal" job assignment at SCI-Rockview.  Presently pending are motions filed by

Plaintiff seeking the appointment of counsel in this case (Dkt. Entries 13, 27), as well as

motions regarding the entry of default judgment (Dkt. Entries 15, 21).  Also pending is

Defendants' motion to dismiss the complaint (Dkt. Entry 17).[1]

## II.    Background

Plaintiff alleges that on April 28, 2006, he and three other inmates reported to Defendant

Yarnell for their inmate job assignment of outside clearance trash removal.  A motor vehicle

referred to by Plaintiff as a "jitney" is used to transport the inmate workers to the various trash

collection sites around the prison to pick up the trash.  The jitney, a steel-plated vehicle, has a

trailer attached to it.  Defendant Yarnell drives the jitney which pulls the inmates and trash on

the trailer.  Plaintiff states that the trailer has inadequate seating, no seatbelts and no brakes.

Plaintiff alleges that after loading trash on the trailer at one of the stops and taking his

seat back on the trailer, Defendant Yarnell began driving the jitney/trailer toward a sliding gate.

According to Plaintiff, as they were approaching the gate, it was already beginning to close.  As

he observed the gate closing, Yarnell immediately "accelerated the jitney to beat the sliding

gate . . . at a speed of approximately 40-50 miles per hour."  (Dkt. Entry 1, Compl. ¶ 21.)  As

---

[1] Also pending is a document entitled "Plaintiff's Motion in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint." (Dkt. Entry 20.)  This filing will be construed to be a supplement to Plaintiff's brief in opposition to the motion to dismiss filed on August 17, 2007. (Dkt. Entry 19.)

the jitney drew closer to the gate, Yarnell began steering away from the gate to avoid hitting it. In doing so, Plaintiff states that he came into direct contact with the steel pole where the gate locks.  As a result, Plaintiff suffered injury to his left thigh, back and right knee.  The other inmate workers yelled to Yarnell to stop driving.  Yarnell exited the jitney to examine the extent of Plaintiff's injuries.  Plaintiff was thereafter assisted back onto the trailer and driven by Yarnell to the medical treatment building at the prison.

Plaintiff states that he was provided emergency medical treatment, which included x-rays, cleansing and dressing of the wounds, pain medication and ice.  He further details the medical care he received from May 1, 2006 through December 13, 2006, which included further x-rays, MRIs, bone scans, examinations and physical therapy.

Plaintiff states that he filed a grievance on May 1, 2006, to Defendant Rackovan, with regard to Yarnell's deliberate indifference to his health and safety regarding the jitney incident. On May 16, 2006, a response to the grievance was issued by Defendant Stover.  Plaintiff filed an appeal from this response to Defendant Tennis.  He contends that an untimely response was received from Tennis on June 26, 2006.  Plaintiff states that he completed the exhaustion of his administrative grievance by appealing to Defendant Burks on July 13, 2006.

Plaintiff asserts that Defendants were deliberately indifferent to his health and safety in that they knew the jitney/trailer vehicle was a potential threat to his well-being because it did not have brakes or seatbelts.  He further contends that Defendant Yarnell was deliberately

indifferent with regard to his operation of the vehicle, resulting in injury to Plaintiff.  Plaintiff

further contends that Defendants Rackovan, Stover and Burks were deliberately indifferent

when they failed to rule in his favor with regard to the grievance and appeals therefrom he filed.

## III.    Discussion

### A.    Motions for Counsel

It is a well-established principle that prisoners have no constitutional or statutory right to

appointment of counsel in a civil case.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir.

1997).  Yet, district courts have broad discretionary power to appoint counsel under 28 U.S.C.

§ 1915.  Montgomery v. Pichak, 294 F.3d 492, 499 (3d Cir. 2002), citing Tabron v. Grace, 6

F.3d 147, 153 (3d Cir. 1993); Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981).  The United

States Court of Appeals for the Third Circuit has stated that the appointment of counsel for an

indigent litigant should be made when circumstances "indicate the likelihood of substantial

prejudice to him resulting, for example, from his probable inability without such assistance to

present the facts and legal issues to the court in a complex but arguably meritorious case."

Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the court in evaluating the expenditure of the

"precious commodity" of volunteer counsel is whether the plaintiff's case "has some arguable

merit in fact and law."  Montgomery, 294 F.3d at 499.  In this case, Walthour's complaint

alleges deliberate indifference to his health and safety.  The case is still at an early stage and a

Case 3:07-cv-00443-SHR   Document 28   Filed 02/04/08   Page 5 of 11

motion to dismiss the complaint is presently pending.  Further, a weighing of the other pertinent

factors militates against appointment of counsel at this time.  Those factors are:

> 1.  The plaintiff's ability to present his or her own case;
>
> 2.  The difficulty of the particular legal issues;
>
> 3.  The degree to which factual investigation will be necessary and
> the ability of the plaintiff to pursue the investigation;
>
> 4.  The plaintiff's capacity to retain counsel on his or her own
> behalf;
>
> 5.  The extent to which a case is likely to turn on credibility determinations; and,
>
> 6.  Whether the case will require testimony from expert witnesses.

Montgomery, 294 F.3d at 499, citing Tabron, 6 F.3d at 155-57.

　　　Presently pending are two motions seeking the appointment of counsel.  In the first

motion (Dkt. Entry 13), Plaintiff cites the following reasons in support of his request:

unfamiliarity with legal principles, inability to pay, complexity of the case and necessity of

counsel for assistance with discovery and trial preparation.  In the second motion (Dkt. Entry

27), he advances some of these same arguments, but adds that in November of 2007 he was

placed in the "Back On Track" inpatient program by the Pennsylvania Board of Probation and

Parole.  The program is 120 days in length and Plaintiff is housed at the Conewago

Wernersville Community Corrections Residency Program, where he does not have access to a

law library.  Based upon his transfer, Plaintiff claims the appointment of counsel is warranted to

5

assist him in litigating this action.

Plaintiff's motions will be denied without prejudice for the following reasons.  The issues involved in this action are straightforward, involving the application of established legal principles to the factual situation at hand.  A review of Plaintiff's filings thus far demonstrates his ability to successfully litigate this case on his own, including his ability to prepare and file motions in this case which are both understandable and cite pertinent legal principles.  Any concern at this point about trial preparation is premature.  Defendants have moved to dismiss, and that motion is ripe.  While the Court is cognizant of the limitations placed on Plaintiff due to his participation in the residency program, he currently has no filing obligations with the Court. He is clearly capable of drafting discovery requests on his own, and should a filing deadline arise where he needs to conduct research prior to his release from the residency program, he can certainly request an enlargement of time from the Court.  Accordingly, the motions for counsel will be denied without prejudice at this time.

### B.      Motions for Default

Also pending are motions for the entry of default/default judgment filed by Plaintiff.   An Order directing service of the complaint was issued on April 3, 2007, and waivers of service filed with the Court on May 23, 2007 (Dkt. Entry 12).  Defendants executed the waivers on April 9, 2007, making a response to the complaint due on or before June 8, 2007.  Because Defendants failed to submit a response, Plaintiff filed a motion for entry of default and

supporting affidavit on August 6, 2007 (Dkt. Entries 15, 16). It appears from the docket that default was never entered by the Clerk's Office.[2]  The following day, Defendants filed a motion to dismiss the complaint.  (Dkt. Entry 17).  In filings made on August 17, 2007, Plaintiff opposed the motion to dismiss on the ground that he moved for entry of default.  (Dkt. Entries 19, 20.) On September 7, 2007, Plaintiff filed a document entitled "Motion for Default Judgment" (Dkt. Entry 21), together with a supporting brief and affidavits.  (Dkt. Entries 22-24.)

Entry of default judgment is a two-step process.  Fed. R. Civ. P. 55.  A party seeking to obtain a default judgment must first request that the clerk of the court "enter ... the default" of the party that has not answered the pleading or "otherwise defend[ed]," within the time required by the rules or as extended by court order.  Fed. R. Civ. P. 55(a).  Timely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b) precludes entry of default.  See Francis v. Joint Force Headquarters Nat'l Guard, Civ. No. 05-4882, 2006 WL 2711459, at *2 (D.N.J. Sept. 19, 2006).  Even if default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court.  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).  Although the entry of a default judgment is largely a matter of judicial discretion, the Court of Appeals has emphasized that such "discretion is not without limits, however, and we

---

[2]  In a later filing, Plaintiff states that default was entered by the Clerk's Office on August 3, 2007.  (Dkt. Entry 21 at 1.)  Plaintiff is clearly incorrect in that he never requested entry of default until August 6, 2007.

have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Id. at 1180-81 (citations omitted).

In the instant case, Plaintiff was procedurally correct in moving for the entry of default on August 6, 2007, as a response to the complaint was overdue.  The day after the motion for entry of default was received, however, Defendants did file a motion to dismiss the complaint, a motion that Plaintiff has opposed on the merits.  In light of the fact that default was never entered in the case, a motion to dismiss has been filed, and Plaintiff has addressed the motion on the merits, the Court will deny the motions for default and address the motion to dismiss.

Before granting a default judgment, the Court is obliged to consider three factors: (1) whether Plaintiff will be prejudiced if the default is not granted; (2) whether Defendants have a meritorious defense; and (3) whether Defendants' delay was the result of culpable misconduct. Id. at 1180.  While Defendants have not addressed the default issue, there is no reason to believe that the failure to respond to the complaint was due to culpable misconduct.  Further, there is no reason to believe Plaintiff will be prejudiced by the denial of default judgment.  He has opposed Defendants' motion to dismiss.  In addition, the Court cannot say at this stage that Defendants ultimately do not have a meritorious defense to Plaintiff's claims.   For these reasons, the motions for default will be denied.

## C.    Defendants' Motion to Dismiss

Without unnecessary elaboration, the motion to dismiss the complaint filed by

8

Defendants will be denied, and Defendants afforded fifteen (15) days within which to file another motion to dismiss or appropriate response to the complaint in this matter.  In their motion to dismiss, Defendants construe the complaint to raise the sole issue of inadequate medical care under the Eighth Amendment.  They argue that Plaintiff has failed to allege sufficient facts to establish deliberate indifference to a medical need in his complaint.  In opposing the motion, Plaintiff argues that he does not raise an Eighth Amendment medical claim.  Rather, he raises an Eighth Amendment claim with respect to Defendants' deliberate indifference to his health and safety regarding the actual jitney/trailer incident, and not the medical care he received for the injuries he sustained.  In reading the complaint, the Court fully concurs with Plaintiff.   There is no basis for concluding that an inadequate medical care claim is raised.  An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOSEPH WALTHOUR,                              :
                                              :
              Plaintiff,                      :        CIVIL NO. 3:CV-07-443
                                              :
       vs.                                    :        (JUDGE VANASKIE)
                                              :
FRANKLIN J. TENNIS, <u>et</u> <u>al</u>.,    :
                                              :
              Defendants.                     :

## O R D E R

_____NOW, THIS 4th DAY OF FEBRUARY, 2008, in accordance with the accompanying

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.     Plaintiff's motions for counsel (Dkt. Entries 13, 27) are **denied without prejudice**.

2.     Plaintiff's motions for default/default judgment (Dkt. Entries 15, 21) are **denied**.

3.     Plaintiff's "Motion in Opposition to Defendants' Motion to Dismiss" (Dkt. Entry 20) is construed to be a supplement to his brief in opposition to the motion to dismiss.  The Clerk of Court is directed to make the appropriate correction to the docket.

4.     Defendants' motion to dismiss (Dkt. Entry 17) is **denied**. Within fifteen (15) days from the date of this Order, Defendants shall file another motion to dismiss or other

appropriate response to the complaint.

**s/ Thomas I. Vanaskie**

Thomas I. Vanaskie
United States District Judge

2