# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH WALTHOUR, | : | |
| | : | **Civil Action No. 3:07-CV-443** |
| **Plaintiff,** | : | |
| | : | **(Judge Rambo)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| FRANKLIN J. TENNIS, et al., | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

The above-captioned action was commenced approximately three and one-half years ago, when Plaintiff Joseph Walthour filed a complaint in which he brought federal claims alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment, and state-law claims for negligence, all arising out of injuries he sustained while working on trash removal detail as an inmate at the State Correctional Institution at Rockview ("SCI-Rockview"). (Doc. 1.) Although Plaintiff commenced this action while he was incarcerated at SCI-Rockview, he has since been paroled and now resides in Philadelphia, Pennsylvania.  He continues to represent himself *pro se* in this litigation.

Following a period of discovery that ended in 2008, the lone remaining Defendant in this action, Barry Yarnell, filed a motion for summary judgment on May

4, 2010. (Doc. 47.) Defendant Yarnell filed a brief in support of his motion on May 28, 2010, along with additional supporting materials. (Docs. 49, 50, 51, 52.) After having been granted an extension of time to oppose the motion, Plaintiff filed a brief in opposition, together with a counterstatement of material facts on September 20, 2010. (Docs. 64, 65.) With the submission of Walthour's opposition materials, Defendant Yarnell's motion for summary judgment is ripe for disposition.

For the reasons set forth below, we recommend that the Court grant Defendant Yarnell's motion with respect to all of Plaintiff's remaining claims.

## II.  **FACTUAL BACKGROUND**[1]

Plaintiff Joseph Walthour was an inmate in the custody of the Pennsylvania Department of Corrections, and during the times relevant to this action, Walthour was

---

[1] The facts set forth in this section are taken from Defendant's statement of undisputed facts (Doc. 51), to the extent there does not appear to be any real dispute regarding their veracity. Although Walthour submitted a document (Doc. 65) that purports to challenge Defendant Yarnell's statement of facts, he relies on virtually no evidence that actually helps to create a dispute of fact. In this regard, Walthour has attached three exhibits that appear to be official decisions from Warden Tennis and other corrections officials denying Walthour's grievances and appeals that he sought following the incident in which he was injured, together with an assortment of medical assessments and progress reports from Walthour's doctors. (Id., Exs. 1-4.) The documents from prison officials denying Walthour's grievances (id., Exs. 1-3) do essentially nothing to cast doubt on Defendant Yarnell's properly supported facts. The documents from Walthour's doctors and other medical professionals (id., Ex. 4) are relevant only to show that Walthour sustained injury, and that he subsequently received treatment. The medical information has no relevance to the threshold legal issues of whether Defendant Yarnell violated Walthour's Eighth Amendment right to be free from cruel and unusual punishment, or whether Defendant Yarnell was negligent. As will be discussed, we find that he has not identified sufficient evidence, or a disputed issue of material fact, in support of these claims.

incarcerated at SCI-Rockview; he was paroled on November 26, 2007. (Doc. 51, Defendant's Statement of Material Facts ¶ 1) (hereafter "SMF ¶ __"). Defendant Barry Yarnell is an employee of the Pennsylvania Department of Corrections stationed at SCI-Rockview, employed during the times relevant to this action as the Corrections Labor Foreman. (SMF ¶ 2, 4.)

On April 28, 2006, Plaintiff and three other inmates reported to Defendant Yarnell for their job assignment of outside trash removal at the prison. (SMF ¶ 3.) Defendant Yarnell used a steel-plated motor vehicle known as a "jitney" for transporting the workers and collected trash around the outside of the prison grounds. (SMF ¶ 5.) Yarnell drove the jitney, which pulled an attached trailer, in which the workers rode, along with the trash that they collected. (SMF ¶ 6.) Inmates were instructed to ride with their legs inside the trailer and to never ride on the surface above the wheel (the "wheel well"). (SMF ¶ 7.) Nevertheless, Franklin Tennis, the Warden at SCI-Rockview, acknowledged in his decision denying Walthour's grievance relating to this matter that there are no requirements as to where inmates must be positioned within the trailer, and that "inmates do occasionally sit on the trailer with their legs hanging over the edge." (Doc. 65, Plaintiff's Brief in Opposition, Ex. 2, Decision of Franklin J. Tennis denying appeal to Grievance No. 151206.)

On April 28, 2006, Walthour and the three other inmates had finished collecting the trash in the restricted housing area at SCI-Rockview, and Yarnell got back into the jitney and the inmates boarded the trailer. (SMF ¶ 9.) After Yarnell and the inmates had taken their seats, Yarnell looked back and saw that the inmates were sitting on the side of the trailer with their legs inside. (SMF ¶ 12.)

Yarnell proceeded to drive the jitney, and steered the jitney slowly through a metal gate that was ahead. (SMF ¶ 13.) As he did so, Yarnell heard shouting and he turned around to see where the noise was coming from. (SMF ¶ 14.) Yarnell observed that the source of the noise was inmate-janitors within the restricted housing unit who were yelling to the inmates riding in the trailer. (SMF ¶ 14 and Ex. 1, Decl. of Barry Yarnell ¶ 14.) Yarnell turned his attention back to the gate, and he continued to drive the jitney forward. (SMF ¶ 15.) At this time, the gate unexpectedly began to close as the jitney continued its approach. (Id.) The evidence of record shows that it takes the gate approximately 30 seconds for the gate to shut completely. (SMF ¶¶ 16; Ex. 1 ¶¶ 16-17; Ex. 5.) In order to avoid colliding with the gate head-on, Yarnell steered the jitney towards the right side of the gate opening. (SMF ¶ 17; Ex. 1 ¶¶ 18-19.)

In contrast to Walthour's unsubstantiated allegation that the jitney was traveling at a speed of somewhere between 40 and 50 miles per hour (Compl., ¶ 21),

the evidence shows that the jitney had a maximum speed of approximately 15 to 18 miles per hour. (SMF ¶ 18; Ex. 1 ¶ 20; Ex. 6, Decl. of Norman Peters ¶ 6.) At the time of the accident the jitney had functioning brakes, although the trailer did not. (SMF ¶ 19.) Because Yarnell was accelerating from a full stop as he drove through the closing gate, the jitney was traveling at approximately 8 to 10 miles per hour. (SMF ¶ 21.)

According to Yarnell's sworn statement, at some point after he began driving away from the restricted housing unit through the closing gate, Walthour had moved over the wheel well on the right side of the trailer. (SMF ¶ 22; Ex. 1 ¶ 23.) Although the vehicle was moving relatively slowly, Plaintiff did not take any steps to place his legs within the trailer. (SMF ¶ 23.) Defendant Yarnell was able to avoid a collision with the gate, and the jitney and trailer cleared the gate. (SMF ¶ 24.) However, Plaintiff's legs struck the gate pole on the right side of the trailer. (SMF ¶ 24; Ex. 1 ¶¶ 22-26; Ex. 10, Incident Report.) All of the other inmates remained with their legs and other appendages within the trailer, and were not injured during the incident. (SMF ¶ 25.)

When he became aware that Walthour had been injured, Yarnell promptly transported him to medical personnel at the prison, where he received medical attention. (SMF ¶ 26.) At this time, Plaintiff was observed ambulating without

5

assistance. (Id.; Ex. 10, Incident Report.) Nevertheless, it appears undisputed that Plaintiff sustained some injuries as a result of the accident.

Plaintiff pursued administrative remedies following the incident, (Doc. 65, Exs. 1-3), and after his administrative grievances and appeals were denied, he commenced this action on March 8, 2007, bringing constitutional and state-law tort claims against Defendant Yarnell and a number of other Defendants. (Doc. 1.) Subsequently, the Court entered an order dismissing all Defendants other than Defendant Yarnell from the action. (Doc. 38.) On May 10, 2010, Defendant Yarnell filed the instant motion for summary judgment, followed by a supporting brief and a statement of material facts and exhibits. (Docs. 47, 49, 50, 51, 52.) After the Court afforded him an enlargement of time, Plaintiff filed a brief in opposition to the motion, along with a response to Defendant Yarnell's statement of facts. (Docs. 64, 65.) The motion is ripe for adjudication.

## III. <u>STANDARD OF REVIEW</u>

Federal courts are permitted to summarily adjudicate an action in order to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a jury trial would therefore "be an empty and unnecessary formality," <u>Peynado v. Sabol</u>, No. 09-355, 2010 U.S. Dist. LEXIS 134131 (M.D. Pa. Dec. 20, 2010). Rule 56 specifically provides that "[t]he judgment

sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment

is appropriate. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. <u>Id.</u> at 252; <u>see</u> <u>also</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

## V. <u>DISCUSSION</u>

Defendant Yarnell argues that he is entitled to summary judgment on Plaintiff's Eighth Amendment and state-law tort claims. We address each of these claims separately below.

### A. Walthour Has Failed to Produce Sufficient Evidence in Support of His Eighth Amendment Claim.

Walthour faces an exacting burden in advancing this Eighth Amendment claim against Defendant Yarnell relating to the accident on April 28, 2006. To sustain such a claim, Walthour must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825,

8

834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). As a starting place, the

Third Circuit has explained the basic requirements of a claim brought against a prison

official under the Eighth Amendment as follows:

An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Furthermore, in

cases involving prison safety or prison conditions, the relevant state of mind "is one

of 'deliberate indifference' to inmate health or safety." Id. As discussed more fully

below, this deliberate indifference standard "is a subjective standard under Farmer –

the prison official-defendant must actually have known or been aware of the

excessive risk to inmate safety." Id.

As explained in Beers-Capitol, in cases based on allegations of deliberate

indifference on the part of prison officials, the Supreme Court has "rejected an

objective test for deliberate indifference; instead it looked to what the prison official

9

actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of prison officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a factfinder may conclude that a prison official knew of a substantial risk from

the very fact that the risk was obvious." Id. Although the Third Circuit has recognized that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim, see, e.g, Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005), the Third Circuit did interpret Farmer to signal that "a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]" However, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence to showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information or indicators that presented a substantial risk to inmate safety. See Farmer, 511 U.S. at 842-43 ("If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk.") (emphasis added).

Even where a plaintiff has presented sufficient evidence to allow a factfinder to reach the inference that a prison official had knowledge of the risk on the basis that risk was obvious, it is clear that an inference may not be compelled, and that the

prison official must be permitted to show that he was actually unaware of the risk in question. Beers-Capitol, 256 F.3d at 132. Lastly, a prison official who is shown to have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he shows that he responded reasonably to the risk, even if the response did not avoid the ultimate harm. Id.

With the foregoing standards in mind, we turn to the evidence that has been developed in this case. Following a review of this evidence – evidence that Plaintiff failed to rebut in any meaningful way, despite having an opportunity to do so – we are left with the firm impression both that Plaintiff has failed to adduce credible evidence that could support his Eighth Amendment claims. In contrast, Defendant Yarnell has identified substantial and uncontradicted evidence that thoroughly discredits Plaintiff's allegations that this corrections employee either intentionally sought to cause him injury, or was deliberately indifferent to an excessive risk to Walthour's safety.

What the evidence shows is that on April 28, 2006, Walthour and three of his fellow inmates at SCI-Rockview reported to Defendant Yarnell for their job assignment of outside trash removal at the prison. The evidence further indicates that Defendant Yarnell was employed as the Corrections Labor Foreman, and was responsible for supervising inmates workers and operating equipment used in trash

removal and recycling at SCI-Rockview. (Doc. 49, Ex. 1, Decl. of Barry Yarnell, ¶¶ 1, 2; SMF ¶ 4.) In connection with this work, Yarnell used a steel-plated motor vehicle known as a "jitney," which towed and attached trailer to transport both the workers and the collected refuse to collection sites around the outside of the prison. (Compl.; Doc. 49, Ex. 1, ¶¶ 3-5; Doc. 49, Ex. 2.) During trash detail on April 28, 2006, Yarnell drove the jitney, which pulled an attached trailer in which the inmate-workers rode, along with the collected trash. (Doc. 49, Ex. 1 ¶ 6; SMF ¶ 6.) It is not subject to any real dispute that the inmates were instructed to ride with their legs securely inside of the trailer, and to never ride on the surface of the trailer above the wheel (Doc. 49, Ex. 1 ¶ 7; SMF ¶ 7), although it also appears that corrections officials knew that inmates occasionally rode with their legs hanging over the edge (Doc. 65, Ex. 2).

After the inmates had finished collecting trash in the area of the restricted housing unit at SCI-Rockview, Yarnell entered the jitney, and the workers got in the trailer. (SMF ¶ 8.) After Yarnell and the inmates had returned to the jitney and the trailer, Yarnell looked to see that the inmate-workers were sitting on the side of the trailer with their legs inside. (SMF ¶ 12; Doc. 49, Ex. 1 ¶ 12.) After hearing a disturbance and discovering that it came from inmates hollering at Walthour and the other men working trash detail, Yarnell started driving the jitney and trailer towards

a gate that unexpectedly began closing. There is no dispute in the record that unless Yarnell continued to drive the jitney and trailer ahead, the gate would have struck either the jitney or the trailer, and may have injured Yarnell or the inmates. There is also no dispute that the jitney, having started from a stopped position, was traveling at most 10 miles per hour – notwithstanding Walthour's unsupported contention that Defendant Yarnell was driving the jitney at speeds approaching 50 miles per hour.

Thus, Yarnell was directing a slow moving jitney through a slowly closing gate, in an effort to avoid a collision and resulting injury to himself and other inmates. There is no dispute in the record that Yarnell succeeded in avoiding this collision, as neither the jitney and the trailer collided with the gate. Unfortunately, Walthour had situated himself on the wheel well at some point during the jitney's forward progress, and he neglected to secure himself within the trailer at any point, despite the vehicle's relatively slow movement. As a result, his leg struck a gate pole as the jitney drove through the closing gate and he sustained injury as a result.

We have carefully reviewed the evidence, and simply cannot find that there is any evidence – or a genuine dispute of fact – to support Plaintiff's allegation that Defendant Yarnell disregarded known or obviously dangerous conditions, or otherwise subjected the plaintiff to them. Indeed, the evidence overwhelmingly demonstrates that Defendant Yarnell took the ***only*** reasonable option that was

available to him after he realized that the gate was closing: proceed through in order to avoid a certain collision and potential injury to himself and the inmates. The evidence thus indicates that Defendant Yarnell's actions were reasonable and appropriate – even necessary under the circumstances presented. Moreover, even if Defendant Yarnell had been aware that Plaintiff had situated himself over the wheel well, this would not change the undisputed fact that the gate was closing and that unless Yarnell was able to drive the jitney and trailer through without a collision, there would have been a substantial risk of injury to himself and the other inmates – none of whom, incidentally, was injured during this incident because they were seated appropriately within the trailer. Furthermore, a prison official who is shown to have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he shows that he responded reasonably to the risk, even if the response did not avoid the ultimate harm. Beers-Capitol, 256 F.3d at 132. Thus, even if Yarnell had seen Walthour's position on the trailer and appreciated the potential danger to him, the evidence in this case shows that his conduct in proceeding through the gate remained the only reasonable response to the situation he faced. On the record before the Court, we thus cannot find that there exists a triable issue of fact in support of Plaintiff's claim that Defendant Yarnell violated his Eighth Amendment rights, and we, therefore, will recommend that the Court grant summary judgment on this claim.

**B.    Walthour Has Failed to Produce Sufficient Evidence in Support of His State-Law Negligence Claim.**

Defendant Yarnell advances two arguments in support of his motion for summary judgment on Plaintiff's claim that Yarnell's negligent operation of the jitney caused his injury.    First, Defendant Yarnell asserts that he is entitled to the protections of sovereign immunity pursuant to 42 Pa. Cons. Stat. Ann. §§ 8521-22 and 42 Pa. Cons. Stat. Ann. § 8524.    Second, Defendant Yarnell insists that even if he is not entitled to sovereign immunity on Walthour's negligence claim, he is nevertheless entitled to summary judgment because the undisputed facts demonstrate that Walthour's injuries were not caused by Yarnell's negligence.    Although we disagree with Defendant Yarnell's argument regarding sovereign immunity, we do agree that Plaintiff has failed to come forward with sufficient evidence to support his negligence claim, and we, therefore, recommend that Defendant Yarnell's motion be granted with respect to this claim as well.

We have little trouble rejecting Defendant Yarnell's argument regarding sovereign immunity.    In general, the Department of Corrections and its employees acting within the scope of their employment are immune from suit.    See 42 Pa. Cons. Stat. Ann. § 8521.    However, 42 Pa. Cons. Stat. Ann. § 8522 sets forth nine exceptions to this general rule of immunity, and waives sovereign immunity where

(1) the state or its employee acting for the state has acted negligently and (2) the state action falls within one of nice specifically enumerated exceptions. The first of these exceptions provides for a waiver of sovereign immunity for negligent conduct in the "operation of any motor vehicle in the possession or control of the Commonwealth party," where "motor vehicle" is specifically defined to include "any vehicle which is self-propelled and any attachment thereto . . . ." 42 Pa. Const. Stat. Ann. § 8522(b)(1).

Recognizing this exception and its apparent application to Walthour's negligence claims in this suit, Defendant Yarnell argues that the exception should not apply because Walthour's operation of the vehicle did not directly cause Walthour's injury; rather, Yarnell argues that his operation of the vehicle merely "facilitate[d] it." (Doc. 49 at 13.) In advancing this argument, Defendant Yarnell relies upon a single case from the Pennsylvania Commonwealth Court, which held that the Southeastern Pennsylvania Transportation Authority was immune from a suit in which a plaintiff alleged that she had been injured on a SEPTA trolley after she was struck by an egg that was thrown through the trolley's window. Hall v. Se. Pa. Transp. Auth., 596 A.2d 1153, 1155-56 (Pa. Commw. Ct. 1991).

We do not agree with Defendant Yarnell that his act of driving the jitney and trailer so close to a metal post that it struck Walthour's leg while the vehicle was

17

moving is analogous to the situation presented in Hall, where an object propelled from outside of a moving vehicle by a third party, who was in no way associated with the operation of the vehicle, ultimately caused the Plaintiff's injury. In that case, the Commonwealth Court could not conclude that the motor vehicle exception applied, because the injuries were not caused – or even alleged to have been caused – by the movement of any part of the vehicle, or even by an act "that is even normally related to the operation of the vehicle." Hall, 596 A.2d at 1156. In contrast to the facts at issue in Hall, however, Walthour is clearly claiming that his injuries resulted from Defendant Yarnell's allegedly negligent decision to drive the vehicle through a closing gate, and unreasonably close to a metal post, without first assuring himself that all of the passengers on the jitney's trailer were safely aboard and out of harm's way. In another decision, the Commonwealth Court held that "[t]he movement of parts of a vehicle, or an attachment to the vehicle, is sufficient to constitute 'operation.'" See Sonnenberg v. Erie Metropolitan Transit Auth., 586 A.2d 1026, 1028 (Pa. Commw. Ct. 1991). This is precisely the sort of "operation" that Walthour has claimed was negligent in this suit, and which he claimed caused him to sustain injury. We thus conclude that the "motor vehicle" exception applies in this case, and recommend that the Court not grant Defendant Yarnell's motion on the basis of sovereign immunity.

What Defendant Yarnell is really arguing is that it was not ***his*** negligence that caused Walthour's injury, but rather ***Walthour's*** own dangerous conduct in allowing his legs to remain dangling over the wheel well of the trailer while the vehicle was in motion – something that he claims inmates were forbidden to do, but which Corrections officials acknowledge is sometimes done. (Doc. 65, Ex. 2.) Defendant Yarnell also argues that his actions in operating the jitney so that it cleared the gate were reasonable, that Plaintiff has failed to come forward with sufficient evidence to support his negligence claim, and that a jury could, therefore, not find that his operation of the vehicle was negligent.

Upon careful consideration, we agree with Defendant Yarnell that there is simply insufficient evidence of negligence to present this case to a jury. As an initial matter, other than presenting his own allegations and argument, Plaintiff has come forward with no evidence to support his contention that Defendant Yarnell's decision to drive the jitney and trailer through the closing gate was negligent. Instead of pointing to evidence of negligence, Walthour contends, with virtually no analysis, that this case constitutes an example of *res ipsa loquitur*, where negligence may be inferred.

We disagree. *Res ipsa loquitur* is "a short-hand expression for a rule of evidence which allows a jury to infer the existence of negligence and causation where

the injury at issue is one that does not ordinarily occur in the absence of negligence."

Sedlitsky v. Pareso, 582 A.2d 1314, 1315 (Pa. Super. Ct. 1990) (citing Gilbert v.

Korvette, Inc., 327 A.2d 94, 99 (Pa. 1974)); see also Tait v. Armor Elevator Co., 958

F.2d 563, 572 (3d Cir. 1992). This evidentiary rule permits "a plaintiff [to] satisfy his

burden of producing evidence of a defendant's negligence by proving that he has

been injured by a casualty of a sort that normally would not have occurred in the

absence of the defendant's negligence." Tennis v. Ford Motor Co., No. 10-563, 2010

U.S. Dist. LEXIS 74827, *30-31 (W.D. Pa. July 26, 2010) (citation omitted).

In Gilbert v. Korvette, Inc., 327 A.2d 94 (Pa. 1974), the Pennsylvania Supreme

Court adopted the definition of *res ipsa loquitur* set forth in Section 328D of the

Restatement (Second) of Torts, which states in relevant part:

> (1) It may be inferred that harm suffered by the plaintiff is
> caused by negligence of the defendant when (a) the event
> is of a kind which ordinarily does not occur in the absence
> of negligence; (b) other responsible causes, including the
> conduct of the plaintiff and third persons, are sufficiently
> eliminated by the evidence; and (c) the indicated
> negligence is within the scope of the defendant's duty to
> the plaintiff.

Restatement (Second) of Torts § 328D cmt. 1 (1965).

The doctrine of *res ipsa loquitur* is thus "only a shorthand expression for

circumstantial proof of negligence – a rule of evidence." Jones v. Harrisburg

Polyclinic Hosp., 437 A.2d 1134, 1137 (Pa. 1981) (quoting Gilbert, 327 A.2d at 99). As such, it is "neither a rule of procedure nor one of substantive tort law." Id.

Plaintiff cannot proceed to trial in the total absence of evidence in support of his claim that Defendant Yarnell was negligent in his operation of the jitney simply by asserting that "sitting on an attached trash trailer and positioning the trash truck as far to the right as possible to avoid a sliding gate only to cause the permanent injuries of an invitee is not an occurrence that ordinarily occurs without negligence, and the evidence does not show any other cause for the plaintiff's injuries . . . ." (Doc. 65 at 5.) Plaintiff fails to appreciate the application of *res ipsa loquitur*. The issue is not what caused his injuries – that is not disputed. Clearly, Plaintiff sustained some injury when his leg struck a gate while the jitney was being operated. Rather, the issue is whether Plaintiff's injuries resulted from Defendant Yarnell's *negligent* operation of the jitney.

Furthermore, the doctrine of *res ipsa loquitur* is not applicable in this case because "other responsible causes," including the conduct of Plaintiff, have not been "sufficiently eliminated by the evidence." Tait, 958 F.2d at 572. In contrast to the total lack of evidence to support his claims that Defendant Yarnell was negligent, the record contains considerable evidence to suggest that it was Plaintiff's own election to leave his legs hanging over the side of the trailer that was substantially to blame

for the resulting injuries. Indeed, no other inmate riding in the trailer was injured during the incident complained of, and all apparently were adhering to the requirement that they keep their legs inside the vehicle while it remained in operation. Thus, not only do we not find that Plaintiff's injuries are the kind that ordinarily would not occur but for negligence, but the evidence of Plaintiff's own negligence during the incident make it apparent that the doctrine of *res ipsa loquitur* would have no application in this case.

In sum, we conclude that Plaintiff has unreasonably failed to come forward with evidence to support his claim that Defendant Yarnell operated the vehicle negligently. Instead, Walthour relies only upon the findings of corrections officials in response to his grievances – which unanimously concluded that Yarnell was not negligent – together with a collection of medical notes and records that have nothing at all to do with Plaintiff's claims of negligence, but instead relate only to Plaintiff's injuries, which have not been contested on summary judgment. Plaintiff has come forward with no evidence to demonstrate that Yarnell was negligent in his operation of the jitney, and in his decision to proceed through the moving gate in order to avoid a collision. In light of this lack of evidence in support of his claims, and finding that Walthour may not simply rely upon the evidentiary rule of *res ipsa loquitur* to create a triable issue, we must recommend that the Court grant Defendant Yarnell's motion

with respect to Plaintiff's state-law negligence claim.[2]

## VI.    RECOMMENDATION

For the reasons set forth above, it is hereby recommended that the Court grant

Defendant Yarnell's motion for summary judgment (Doc. 47) with respect to all

remaining claims in this case.  The Plaintiff is placed on notice that pursuant to Local

Rule 72.3:

_____

[2]In the alternative, we note that the dismissal of Walthour's constitutional claims, in turn, may suggest  the appropriate course for the Court to follow in addressing any ancillary state law negligence or malpractice claims that the plaintiff may wish to pursue against these Defendants. In a case such as this, where the jurisdiction of the federal court was premised on an alleged federal civil rights violation which is found not to state a cause of action upon which relief can be granted, the proper course is for 'the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White  No. 05-2150, 2007 WL 3033865, *13 (M.D.Pa. Oct. 15, 2007)(dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008)("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir.1976).")

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of January, 2011.


*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge